Filed 1/12/16  Conservatorship of the person of E.M. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person of E.M. | |
| M.M., | G050405 |
| Petitioner and Appellant, | (Super. Ct. No. 30-2011-00488602) |
| v. | O P I N I O N |
| KEVIN G. SMITH, as Public Guardian, etc., | |
| Objector and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Affirmed.

M.M., in pro. per., for Petitioner and Appellant.

Nicholas S. Chrisos, County Counsel, and Robert N. Ervais, Deputy County Counsel, for Objector and Respondent.

\*          \*          \*

## I. Introduction

In September 2012, the Orange County Public Guardian (Respondent)[1] was appointed conservator of the person of E.M., a developmentally disabled adult, pursuant to Probate Code section 1801, subdivision (d).[2] E.M.'s mother, M.M. (Mother), appeals from an order, made in June 2014, denying her petition to remove the conservator or, in the alternative, to terminate the conservatorship over E.M. We affirm the order because Mother has not presented a record overcoming the presumption of correctness and affirmatively proving error.

In a companion case (appeal No. G051138), Mother appeals from an order restricting her visitation with E.M. to monitored visits. That appeal is covered in a separate opinion.

## II. Facts and Procedural History

### A. *The Conservatorship Petition*

E.M. is the daughter of Mother and her ex-husband, B.M. (Father). E.M. has been diagnosed with autism, attention deficit disorder, mental retardation, obsessive-compulsive disorder, psychosis, depressive disorder, and anxiety disorder. In

---

[1] In September 2012, the public guardian was Lucille Lyon. Appearing as Respondent is Kevin G. Smith, who was appointed interim public guardian in March 2014.

[2] Probate Code section 1801, subdivision (d) states: "A limited conservator of the person or of the estate, or both, may be appointed for a developmentally disabled adult. A limited conservatorship may be utilized only as necessary to promote and protect the well-being of the individual, shall be designed to encourage the development of maximum self-reliance and independence of the individual, and shall be ordered only to the extent necessitated by the individual's proven mental and adaptive limitations. The conservatee of the limited conservator shall not be presumed to be incompetent and shall retain all legal and civil rights except those which by court order have been designated as legal disabilities and have been specifically granted to the limited conservator. The intent of the Legislature, as expressed in Section 4501 of the Welfare and Institutions Code, that developmentally disabled citizens of this state receive services resulting in more independent, productive, and normal lives is the underlying mandate of this division in its application to adults alleged to be developmentally disabled."

April 2012, court-appointed counsel for E.M. filed a petition under Probate Code section 2351.5 (the Conservatorship Petition), seeking a limited conservatorship of the person and requesting that Respondent be appointed conservator. When the Conservatorship Petition was filed, E.M. was 19 years old and living in a regional center, level IV, adults-only, home with several other special needs adults.

The Conservatorship Petition alleged that E.M. is an adult, is "unable to properly provide for . . . her personal needs for physical health, food, clothing, or shelter," "has no understanding as to housing, medical treatment, finances or financial record keeping," and "is gravely impaired in a number of areas," including the ability to make purchases, enter into simple contracts, keep financial records, and make decisions on medical issues. "[D]ue [to] the grave disabilities of [E.M.], with onset during her early minority, [E.M.] will be unable to understand real world situations and will be unable to be transitioned into an independent living program, either now or at any[]time in the future." According to the Conservatorship Petition: "[T]he current placement of [E.M.] is the least restrictive environment for [her], considering the nature and extent of her profound disabilities. . . . [E.M.] appears to be doing well in her adjustment to this placement."

In 2011, Mother had filed a petition to have herself appointed conservator of E.M. Father likewise had filed a petition to have himself appointed conservator of E.M. The relationship between Mother and Father was "hostile" and "acrimonious."

The Conservatorship Petition alleged that Mother "is not capable of making decisions that are appropriate for [E.M.], often expressing unrealistic expectations for [E.M.], and making demands for performance that are unobtainable in the opinion of other professionals familiar with the case."

The trial court conducted an evidentiary hearing in September 2012, at which Mother and Father, among others, testified, and various investigative reports and reports from the regional center were received in evidence. At the conclusion of the

3

hearing, the court appointed Respondent as limited conservator of the person of E.M. and granted Respondent various powers under Probate Code section 2351.5. The court denied Mother's petition for appointment of conservator and dismissed Father's petition for appointment of conservator. Letters of conservatorship were issued on September 20, 2012.

B. *Mother's Petition to Remove the Conservator*

In June 2013, Mother filed a petition to remove the conservator, in which she made various allegations of wrongdoing against Respondent. She alleged that in June 2012, Respondent (who at that time was John S. Williams) had been accused by the Orange County Board of Supervisors of fraud and mismanagement. Mother alleged the conservatorship "imprisoned and isolated" E.M. in a "jail-like residential facility for life without parole," where she would be used as a "guinea pig to experiment with new drugs for the purpose of receiving kick backs from pharmaceutical companies." (Capitalization, boldface, & underscoring omitted.) Mother sought to have herself appointed conservator of E.M. in place of Respondent.

A hearing on Mother's petition to remove the conservator was conducted in June 2014. After hearing an opening statement from Mother and testimony from E.M.'s court-appointed attorney, the court found that a limited conservatorship continued to be necessary and that "insufficient evidence was presented." The court denied Mother's petition to remove the conservator and ordered that visitation continue to be monitored. Mother filed a notice of appeal from the order denying her petition to remove the conservator.

### III. Discussion

Respondent initially argues that Mother's opening brief must be rejected outright because it includes no record citations or meaningful legal analysis. Mother's opening brief does not comply with California Rules of Court, rule 8.204(a)(1)(C), makes

4

what appears to be extreme and unsupported arguments, and restates much of the allegations made in Mother's petition to remove the conservator. Although a self-represented litigant is held to the same rules as an attorney (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985), due to the nature of this matter, we exercise our discretion and consider the appeal on the merits.

Probate Code section 1801, subdivision (d) authorizes the appointment of "[a] limited conservator of the person or of the estate, or both," for "a developmentally disabled adult." Probate Code section 2351.5, subdivision (a)(1) provides that "[t]he limited conservator has the care, custody, and control of the limited conservatee," but does not have other powers unless expressly granted under section 2351.5, subdivision (b).

A court's decision to appoint a conservator is reviewed for substantial evidence. (*Conservatorship of Ramirez* (2001) 90 Cal.App.4th 390, 401.) "In making that determination, we view the entire record in the light most favorable to the trial court's findings. [Citations.] We must resolve all conflicts in the evidence and draw all reasonable inferences in favor of the findings. [Citation.] Substantial evidence is evidence of ponderable legal significance. [Citations.]" (*Ibid.*)

We have no record of the proceedings on the hearing on Mother's petition to remove the conservator except for the court's minute order denying the petition. That order is presumed correct, all intendments and presumptions are indulged in favor of its correctness, and Mother, as the appellant, bears the burden of providing a record affirmatively proving error. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Mother has not procured a reporter's transcript, or suitable substitute, of the hearing on her petition to remove the conservator and therefore has not met her burden of proving error. (See *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)

5

## IV.  Disposition

The order denying Mother's petition to remove the conservator is affirmed. In the interest of justice, each party shall bear his or her own costs.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.